Cherokee County - 369th District Court

Filed 11/12/2019 4:17 PM
Alison Dotson
District Clerk
Cherokee County, Texas

Kelly Curry

CAUSE NO. 2019110546

| | | |
|---|---|---|
| ANTHONY TRISTANI, RADFORD TARRY, and MARK MARSHALL, | § § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § | |
| v. | § § | _____ JUDICIAL DISTRICT |
| OPTIONSELLERS.COM, INC. and JAMES CORDIER, | § § § § | |
| Defendants. | § § | CHEROKEE COUNTY, TEXAS |

## PLAINTIFFS' ORIGINAL PETITION

COME NOW Plaintiffs, ANTHONY TRISTANI ("Tristani"), RADFORD TARRY ("Tarry"), and MARK MARSHALL ("Marshall") (hereinafter, "Plaintiffs") by and through undersigned counsel, hereby file Plaintiffs' Original Petition against Defendants, OPTIONSELLERS.COM, INC. ("OptionSellers") and JAMES CORDIER ("Cordier") (hereinafter, collectively, the "Defendants"), and state:

### I. DISCOVERY LEVEL

Plaintiffs request this lawsuit proceed under a Level 3 Discovery Control Plan pursuant to Rule 190.4 of the Texas Rules of Civil Procedure.

### II. INTRODUCTION

1. This case is about the reckless mismanagement of Plaintiffs' investment accounts by OptionSellers, a Commodities Trading Advisor ("CTA") and its principal and alter ego, Defendant Cordier. Defendants implemented a grossly speculative options trading strategy that involved an over-concentrated position of naked call options on natural gas futures. Further, when the price of natural gas spiked, rather than close out exposed options positions and thereby instantly



PLAINTIFFS' ORIGINAL PETITION

PAGE 1

stop further loss, Defendants instead doubled down on their natural gas positions, thereby creating a catastrophic loss for the Plaintiffs.

2. The investment strategy implemented by Defendants was in direct conflict with the written and verbal representations Defendants made to customers, including Plaintiffs, in order to solicit their business. Defendants represented to Plaintiffs that they had developed a time tested method for trading options that enabled them to "take an aggressive vehicle and manage it conservatively." Defendants further represented that they implemented a "submarine" approach to options trading, which consisted of establishing long/short options positions in at least five non-correlated commodities in order to achieve diversification while also maintaining a substantial cash cushion in the event of downside price movements.

3. In practice, Defendants departed from this diversified approach and became over concentrated in two commodities—natural gas and crude oil. Between November 1-15, 2018, the price of natural gas spiked nearly 50% with the most dramatic price increase occurring between November 13-15 (approximately 24% increase), due to a "short squeeze," which occurs when investors cover their short positions in a security or commodity.

4. In just three days, due to the over-concentration in naked call options on natural gas coupled with the corresponding rise in the spot price of natural gas, nearly 300 customer accounts managed by OptionSellers were wiped out, causing damages of $200 million. To make matters worse, customers, including Plaintiffs, have outstanding margin calls in excess of the principal value of their account.

### III. JURISDICTION AND VENUE

5. Subject matter jurisdiction is properly vested in this Court. The District Court of the State of Texas has jurisdiction over this action. All Defendants have: (a) contracted by mail or

otherwise with Texas individuals, which contracts were to be performed, in whole or in part, in Texas; (b) committed torts, which are the subject of this action, in whole or in part, in Texas; and/or (c) otherwise transacted business in Texas such that they are all subject to personal jurisdiction in Texas.

6. This Court has personal jurisdiction over all Defendants because they are licensed to do business in and/or conduct a substantial amount of business in the State of Texas, and their business in the State of Texas gave rise to Plaintiffs' claims. During the relevant time, Defendants did sufficient business in, had sufficient contacts with, and intentionally availed themselves of the laws and markets of Texas through the promotion, sale, marketing, distribution and operation of their products and services, as to render exercise of general jurisdiction by Texas courts permissible.

7. This Court is the proper venue for this action pursuant to Texas Civil Practices and Remedies Code Section 15.002(a)(1) because all or a substantial part of the events or omissions giving rise to Plaintiffs' claim occurred in Cherokee County. Further, Defendants are non-residents of Texas and do not maintain a principal office in Texas and as such, venue is proper in Cherokee County pursuant to Texas Civil Practices and Remedies Code Section 15.002(a)(4) as Plaintiff Mark Marshall is a resident of Cherokee County.

8. This Court is the proper venue for this action because at all times Plaintiffs' claims arose out of the same transaction, occurrence, or series of transactions occurring in Cherokee County.

### IV. PARTIES

9. Plaintiff Anthony Tristani is an individual resident of Cherokee County in the state of Texas.

10. Plaintiff Radford Tarry is a resident of Smith County in the state of Texas

11. Plaintiff Mark Marshall is a resident of Cherokee County in the state of Texas

12. Defendant OptionsSellers.Com, Inc. is Florida Corporation with its principal place of business located at 401 East Jackson Street, Suite 2310, Tampa, FL 33602.

13. Defendant OptionSellers.Com, Inc., is a Florida Corporation, has engaged in business and committed torts in the State of Texas, and this proceeding arises out of the business and torts that OptionSellers.Com, Inc. has conducted and committed in the State of Texas, and to which OptionSellers.Com, Inc. is a party. OptionSellers.Com, Inc. does not maintain a designated agent for service of process in the State of Texas, nor does it maintain a regular place of business in the State of Texas. Accordingly, the Secretary of State is an agent for service of process on OptionSellers.Com, Inc. pursuant to Texas Civil Practices and Remedies Code Section 17.044(b). Plaintiffs, therefore, request that OptionSellers.Com, Inc. be served according to that same provision, through the Secretary of State of the State of Texas, who shall be served with duplicate copies of process at the following address:

> OptionSellers.Com, Inc.
> c/o Office of the Secretary of State
> Statutory Documents Section – Citations Unit
> P.O. Box 12079
> Austin, Texas 78711-2079

In accordance with Texas Civil Practices and Remedies Code Section 17.045(a), the Secretary of State is requested to forward by registered mail or certified mail, return receipt requested, a copy of the process, citation and complaint to its home office located at:

> 401 East Jackson Street, Suite 2310
> Tampa, FL 33602

14. Defendant, James Cordier, is the President of OptionSellers and, upon information and belief, its sole shareholder. Mr. Cordier's place of residence is located at 1429 Jumana Loop, Apollo Beach, FL 33527.

15. Defendant James Cordier is a Florida resident that has engaged in business and committed torts in the State of Texas, and this proceeding arises out of the business and torts that Cordier has conducted and committed in the State of Texas, and to which Cordier is a party. Cordier does not maintain a designated agent for service of process in the State of Texas, nor does he maintain a regular place of business in the State of Texas. Accordingly, the Secretary of State is an agent for service of process on Cordier pursuant to Texas Civil Practices and Remedies Code Section 17.004(c). Plaintiffs, therefore, request that Cordier be served according to that same provision, through the Secretary of State of the State of Texas, who shall be served with duplicate copies of process at the following address:

James Cordier
c/o Office of the Secretary of State
Statutory Documents Section – Citations Unit
P.O. Box 12079
Austin, Texas 78711-2079

In accordance with Texas Civil Practices and Remedies Code Section 17.045(a), the Secretary of State is requested to forward by registered mail or certified mail, return receipt requested, a copy of the process, citation and complaint to his home as follows:

1429 Jumana Loop
Apollo Beach, FL 33527

17. This Court has both specific and general jurisdictions over OptionSellers and Cordier because they engaged in acts and torts in Texas related to this lawsuit and the events giving rise to the claims in this complaint resulted from their activities in Texas.

## V. CONDITIONS PRECEDENT AND CLAIMS

18. All conditions precedent to recovery by Plaintiffs herein have been satisfied.

## VI. AGENCY

19. Unless otherwise stated herein, whenever it is alleged in this pleading that OptionSellers committed an act, made a representation or a statement, failed to perform an act, or failed to make a statement, it means that OptionSellers was acting or failing to act through its authorized agents, servants or employees acting with either express, implied, apparent and/or ostensible authority; or that OptionSellers subsequently ratified and benefitted financially from these acts, failures to act, representations, statements or conduct. Plaintiffs further plead that James Cordier acted as the authorized agents of OptionSellers with express, implied, apparent and/or ostensible authority, or that OptionSellers subsequently ratified the acts, failures to act, representations, statements or conduct Cordier as alleged herein and/or benefitted financially therefrom. Plaintiffs, therefore, allege that OptionSellers is liable for the actions of Cordier and Michael Gross as alleged herein.

## VII. FACTUAL BACKGROUND

20. In 1999, Mr. Cordier and his partner, Michael Gross, formed Liberty Trading Group, Inc. ("Liberty"), a Commodities Trading Advisory firm, which held itself out as an expert in options trading.

21. In order to facilitate their trading strategies, through 2012, Liberty directed clients to open accounts at Peregrine Financial Group ("PFG"), a registered Broker-Dealer and Futures Trading Merchant ("FCM").

22. In 2012, PFG was shut down by the regulators after it was discovered that its principals were engaged in fraud, which resulted in a $200 million shortfall in customer funds.

After PFG's collapse, Liberty, Cordier and Gross became the subject of numerous lawsuits.

23. In 2014, in an effort to overcome this industry stain, Cordier and Gross rebranded Liberty as OptionSellers.

24. Mr. Cordier, who often appears on CNBC, Bloomberg, and other news media, authored the book entitled "The Complete Guide To Options Selling: How Selling Options Can Lead to Stellar Returns in Bull or Bear Markets." Mr. Cordier and OptionSellers advocate that "our goal is to take an aggressive vehicle and manage it conservatively." Mr. Cordier further states that "while naked options may sound outrageously aggressive and even frightening to some, if it is done correctly, one should be able to sleep very well at night."

25. In or about 2017, Plaintiffs received solicitation from OptionSellers and Mr. Cordier. Mr. Cordier pitched OptionSellers' strategy of buying/selling options on commodities futures as a safe alternative to traditional stock market risk. It was explained to Plaintiffs that Defendants would execute an options strategy involving straddles, strangles and spreads and, in order to further mitigate risk, that the strike prices for the options would be far out of the money, meaning the price of the underlying securities/commodity would need to change dramatically for the strategy not to work as designed.

26. Defendants touted to Plaintiffs their "submarine" approach to options trading, which focused on investing in five or six uncorrelated commodities and maintaining a cash cushion of at least 50% of the account net liquidation value. By design, if one commodity experienced adverse price movements, the remaining five or six uncorrelated commodities would buoy the submarine (i.e., the account) from sinking. As will be discussed below, the strategy implemented by Defendants was diametrically opposite to the "submarine" risk mitigation and diversification strategy.

27. In or about January 2017, at the direction of Defendants, Tristani gave Defendants discretionary trading authority over $1,000,000 in his account.

28. In or about April, 5, 2018, at the direction of Defendants, Marshall gave Defendants discretionary trading authority over $500,000.

29. In or about October 5, 2018, at the direction of Defendants, Tarry gave Defendants discretionary authority over $500,000.

30. Even though Plaintiffs had designated accounts in their individual names, upon information and belief, Defendants implemented a singular strategy on behalf of all their clients. To this end, upon information and belief, Defendants bought and sold securities and/or commodities within an aggregated account in the name of OptionSellers and subsequently allocated those positions to client accounts post-trade.

31. While Plaintiffs knew that Defendants would execute an options-based strategy, Plaintiffs were not aware that the strategy would involve a concentrated position in naked call options tied to correlated commodities. Rather, Plaintiffs believed and expected that Defendants would adhere to their pledge to invest the account in a responsible way with risk diversified evenly among five or six unrelated commodities markets and subject to maintaining at least a 50% unencumbered cash cushion in the account. Unfortunately, this did not occur.

32. An options strategy built around naked call option positions is the most aggressive form of options trading. When an investor holds naked call options, the success of the strategy depends on the price of the underlying security or commodity remaining below the strike price. If the security or commodity appreciates in value above the strike price, and the option is exercised, the investor is required to purchase the underlying security or commodity at market value. Because there is no ceiling to the spot price of any security or commodity, if a naked call option is exercised,

the investor is required to pay the prevailing market price to purchase the commodity or security, however high that may be. Moreover, because options trades are inherently leveraged, if an option contract gets exercised by the counterparty, the investor's financial obligation is typically multiples of his actual principal investment, which can dramatically magnify the losses.

33. As it relates to the specific strategy implemented by Defendants to Plaintiffs, the risk/reward ratio associated was wildly imbalanced. Far "out of the money" options were sold, meaning the spot price of the commodity was well below the strike price of the call option or well above the strike price of the put option. "Out of the money" options generally pay small premiums to the investor and, in theory, require larger market movements before an option will get exercised. However, in exchange for small premiums (i.e., limited benefit), the investor continues to carry the risk of complete loss in the event there are meaningful movements in the spot price of the underlying commodity. In the industry, this is referred to as "picking up pennies in front of a steamroller."

34. By the end of October 2018, there was tremendous systemic risk built up in Plaintiffs' portfolios. Plaintiffs' accounts were over-concentrated in naked call and put options on crude oil and natural gas futures, two correlated assets.

35. The ratio between the initial margin requirement and the liquidation value of the portfolio reached excessively high levels. Given the concentration in natural gas and crude options, the margin ratio placed the account at considerable risk for materially adverse price movements.

36. Beginning in late October, the spot price of natural gas began incrementally increasing as reports surfaced that parts of the United States would have a colder than expected

winter. As concern grew that natural gas reserves may need to be utilized to meet demand, the price escalated further.



37. Notwithstanding the foregoing, Defendants continued to build up the naked call position on natural gas futures, which is converse to conventional wisdom when the underlying security or commodity is appreciating in value and the data are suggesting that the strong upward trend may continue.

38. Between November 1 and November 9, in Plaintiffs' accounts, Defendants increased the naked call position of natural gas futures, further concentrating Plaintiffs' accounts. Put another way, instead of attempting to counterbalance the concentrated exposure to naked call options on natural gas futures, Defendants essentially "doubled down" on their bet that natural gas prices would not continue to appreciate by "rolling up" the natural gas call options. This dug a deeper hole for Plaintiffs.

39. Neither OptionSellers nor Mr. Cordier notified Plaintiffs that Defendants departed from the so-called conservative options strategy and began implementing a grossly speculative trading strategy. In other words, Defendants failed to notify Plaintiffs that the risk profile of the

account and the overall strategy changed or that the strategy was no longer consistent with what Defendants touted both verbally and in their marketing materials.

40. Between November 13-15, 2018, the spot price of natural gas increased an additional 25% and investors sought to cover "short" positions, which further drove up the spot price of natural gas. This is known as a "short squeeze."

41. By November 15, Plaintiffs' accounts were in the "red." In three days' time, the accounts of all 300 FCStone clients serviced by Defendants, including Plaintiffs, were completely wiped out and carried unsecured margin balances beyond the investment principal. Plaintiffs lost the entirety of their principals and were issued margin calls. Plaintiffs have collectively lost over $2,200,000.

42. The investor losses were completely avoidable. Defendants implemented and then failed to react to a dangerously escalating concentration of risk in natural gas call options over a period of almost two weeks in early/mid-November 2018, and failed to monitor the sharp increase in the leverage ratio of Plaintiffs' accounts between October 31 and November 12. The combination of these factors made the ultimate outcome (i.e., the complete losses of Plaintiffs' principals) inevitable.

## VIII. CAUSES OF ACTION
### First Cause of Action
### Misrepresentation/Omission (all Defendants)

43. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 42 above.

44. Defendants made material misrepresentations and omissions to Plaintiffs in connection with their recommendation that they establish a relationship with Defendants and grant them discretionary authority to trade their accounts, including but not limited to, the following:

a. Failing to disclose to Plaintiffs that OptionSellers, Cordier and Gross have been the subject of customer complaints, regulatory investigations and lawsuits regarding their investment management and advice;

b. Misrepresenting the type and nature of the options trading strategy to be implemented in Plaintiffs' accounts by touting a diversified approach when, in actuality, the strategy involved a high concentration in correlated commodities;

c. Concentrating Plaintiffs' assets in singular classes of commodities when Plaintiffs were told that Defendants would diversify;

d. Failing to maintain a 50% cash cushion in the accounts to protect Plaintiffs' accounts against downside movements in the price of securities or commodities;

e. Misrepresenting that both Defendants would monitor the concentration and leverage ratios in the accounts in order to preserve principal and mitigate risk;

f. Failing to disclose the arbitrary nature in which trades and margin was allocated across customer accounts, including Plaintiffs' accounts, resulting in disproportionate margin calls.

45. Defendants knew or should have known that their misrepresentations were false.

46. Defendants knew that the facts they omitted to disclose to Plaintiffs were necessary to make other statements, when viewed in the light of the circumstances under which they were made, not misleading.

47. Plaintiffs relied on the representations made by Defendants.

48. As a direct and proximate result of Defendants' misrepresentations and omissions, Plaintiffs have been damaged.

49. OptionSellers is individually liable, as well as vicariously liable, for the conduct of its employees and agents, including Cordier and Gross, pursuant to the doctrine of *respondeat superior* and/or actual/apparent authority.

### Second Cause of Action
### Negligent Misrepresentation (all Defendants)

50. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 49 above.

51. Defendants made material misrepresentations and omissions to Plaintiffs in connection with their recommendation that they invest in the options strategy, including but not limited to, the following:

    g. Failing to disclose to Plaintiffs that OptionSellers, Cordier and Gross have been the subject of customer complaints, regulatory investigations and lawsuits regarding their investment management and advice;

    h. Misrepresenting the type and nature of the options trading strategy to be implemented in Plaintiffs' accounts by touting a diversified approach when, in actuality, the strategy involved a high concentration in correlated commodities;

    i. Concentrating Plaintiffs' assets in singular classes of commodities when Plaintiffs were told that Defendants would diversify;

    j. Failing to maintain a 50% cash cushion in the accounts to protect Plaintiffs' accounts against downside movements in the price of securities or commodities;

    k. Misrepresenting that both Defendants and FC Stone would monitor the concentration and leverage ratios in the accounts in order to preserve principal and mitigate risk; and

l. Failing to properly handle margin liquidations and trade allocations in customer accounts, including Plaintiffs' accounts.

52. Defendants knew or should have known that their misrepresentations were false.

53. Defendants knew or should have known that the facts they omitted to disclose to Plaintiffs were necessary to make other statements, when viewed in the light of the circumstances under which they were made, not misleading.

54. Plaintiffs relied on the representations made by Defendants.

55. As a direct and proximate result of Defendants' misrepresentations and omissions, Plaintiffs have been damaged.

56. OptionSellers is individually liable, as well as vicariously liable, for the conduct of its employees and agents, including Cordier and Gross, pursuant the doctrine of *respondeat superior* and/or actual/apparent authority.

### Third Cause of Action
### Breach of Fiduciary Duty (all Defendants)

57. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 56 above.

58. Defendants held themselves out to Plaintiffs as properly licensed and registered CTAs who were qualified to provide them with advice and recommendations with regard to their investments.

59. Plaintiffs reposed their trust and confidence in Defendants, which they accepted. As such, Defendants owed Plaintiffs a fiduciary duty to, among other things:

   a. Manage the accounts in a manner directly comporting with the needs and objectives of the customer;

   b. Not misrepresent or fail to disclose material facts;

c. Keep informed regarding the changes in the market which affect their customers' interests and act responsively to protect those interests;

d. Keep the customers informed as to each completed transaction;

e. Explain the practical impact and potential risks of the course of dealing which they were engaged; and

f. Failing to properly handle margin liquidations and trade allocations in customer accounts, including Plaintiffs' accounts.

60. Defendants abused and violated all of their fiduciary duties to Plaintiffs which directly and proximately caused Plaintiffs to sustain significant damages.

61. OptionSellers is individually liable, as well as vicariously liable, for the conduct of its employees and agents, including Cordier and Gross, pursuant to the doctrine of *respondeat superior* and/or actual/apparent authority.

**Forth Cause of Action**
**Negligence (all Defendants)**

62. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 61 above.

63. Defendants held themselves out to Plaintiffs as qualified to provide them with advice and recommendations with regard to their investments.

64. Plaintiffs reposed their trust and confidence in Defendants, which they accepted. As such, Defendants owed Plaintiffs a duty to, among other things:

a. Manage the accounts in a manner directly comporting with the needs and objectives of the customers;

b. Not misrepresent or fail to disclose material facts;

c. Keep informed regarding the changes in the market which affect their customers' interests and act responsively to protect those interests;

d. Keep their customers informed as to each completed transaction;

e. Explain the practical impact and potential risks of the course of dealing which they were engaged; and

f. Failing to properly handle margin liquidations and trade allocations in customer accounts, including Plaintiffs' account.

65. Defendants abused and violated all of their duties to Plaintiffs, which directly and proximately caused Plaintiffs to sustain significant damages.

66. OptionSellers is individually liable, as well as vicariously liable, for the conduct of its employees and agents, including Cordier and Gross, pursuant to the doctrine of *respondeat superior* and/or actual/apparent authority.

### Fifth Cause of Action
### Negligent Supervision (OptionSellers)

67. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 66 above.

68. OptionSellers has a common law duty to supervise its employees and officers with regard to, among other things, sales practices, trading practices and communications with the public.

69. OptionSellers breached its duty of care by, among other things, failing to supervise its partners, officers, employees and agents in the opening and approval of the accounts, including permitting naked options trading in Plaintiffs' account, as well as the implementation and execution of the investment strategy in Plaintiffs' account. OptionSellers also failed to supervise the margin liquidation process to ensure compliance with applicable laws, rules and regulations as

set forth herein. In addition, upon information and belief, OptionSellers also breached its duties with regard to post-trade allocation of profits and losses in accounts serviced by OptionSellers, including Plaintiffs' accounts.

70. OptionSellers' misconduct is the direct and proximate cause of damages to Plaintiff.

71. OptionSellers is individually liable, as well as vicariously liable, for the conduct of its employees and agents, including Cordier and Gross, pursuant to the doctrine of *respondeat superior* and/or actual/apparent authority.

## IX. CLAIMS FOR RELIEF

72. Pursuant to Tex. R. Civ. P. 47, Plaintiffs bring this action against Defendants for fraud, negligence, negligent misrepresentation, and breach of fiduciary duty. Damages sought by Plaintiffs are within the jurisdictional limits of the court. Plaintiffs seek monetary relief over $2,000,000.

## X. DAMAGES

73. As a proximate result of the incidents made the basis of this suit and Defendants' conduct, Plaintiffs bring this suit against the Defendants to recover damages for the following items:

a) Judgment in Plaintiffs' favor in an amount to be determined at trial, but no less than $2,200,000;

b) Special damages and/or consequential damages;

c) Loss of assets and/or loss of opportunity to invest in legitimate investments plans and/or lost investment interest and/or lost interest;

d) Disgorgement of the Defendants' profits;

e) Prejudgment and post-judgment interest;

f) Costs of Court;

g) Punitive or Exemplary Damages under Texas common law;

h) Attorney's Fees; and

i) Such other and further items of damages as may be supplemented as a result of the discovery performed in this suit.

## X.  JURY DEMAND

74. Plaintiffs hereby demand a trial by jury in this action. A jury fee has been paid on behalf of Plaintiffs.

## XI.  PRAYER

WHEREFORE, Plaintiffs respectfully requests that a jury be empaneled to hear this cause, Defendants be cited to appear and answer, and that Plaintiffs have judgment against Defendants for the all relief requested herein and all other relief, in law or in equity, to which Plaintiffs may justly be entitled.

Respectfully submitted,

**FEE, SMITH, SHARP & VITULLO, L.L.P**



Anthony L. Vitullo
State Bar No. 20595500
Garrett J. McLearen
State Bar No. 24090258
Jim Goff
State Bar No. 24095427
Taylor J. Giusti
State Bar No. 24095374
Three Galleria Tower
13155 Noel Road, Suite 1000
Dallas, Texas 75240
(972) 934-9100 (phone)
(972) 934-9200 (fax)
lvitullo@feesmith.com
gmclearen@feesmith.com

**ATTORNEYS FOR PLAINTIFFS**