IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

ANTHONY TRISTANI,
RADFORD TERRY, and
MARK MARSHALL,

    Plaintiffs,

v.

OPTIONSELLERS.COM, INC. and
JAMES CORDIER,

    Defendants.

Case No. 6:19-cv-585-JDK

**OPINION AND ORDER GRANTING-IN-PART MOTION TO DISMISS**

Plaintiffs Anthony Tristani, Radford Terry, and Mark Marshall sued Defendants OptionSellers.com, Inc. and James Cordier for "reckless mismanagement of Plaintiffs' investment accounts." Docket No. 2 at ¶ 1. Defendants initially moved to dismiss the case in favor of arbitration or, alternatively, to transfer venue. Docket No. 6. The Court denied that motion. Docket No. 24. Defendants now move for dismissal under Federal Rule of Civil Procedure 12(b)(6). Docket No. 32.

For the reasons discussed below, the Court **GRANTS IN PART** Defendants' motion and **DISMISSES WITH PREJUDICE** Plaintiffs' claims of negligent misrepresentation, negligence, and negligent supervision (Counts 2, 4, and 5). The remainder of Defendants' motion is **DENIED**.

1

## I.  BACKGROUND

Plaintiffs engaged James Cordier, the principal and alter ego of OptionSellers, to manage their investment accounts. Docket No. 2 at ¶¶ 1, 27–29. To formalize the relationship, each Plaintiff signed multiple agreements, including the Managed Account Agreement and Power of Attorney, which granted Defendants the authority to trade on Plaintiffs' commodity accounts, and the Advisory and Fee Payment Authorization Agreement, which set forth the rules governing trading.[1] Docket Nos. 24 at 3; 32 at 6–7.

Before the parties executed agreements, Defendants allegedly made written and verbal representations to Plaintiffs explaining Defendants' investment strategy. Docket No. 2 at ¶ 2. For example, Plaintiffs allege that Defendants touted their time-tested "submarine" approach, which consists of long- and short-option positions in diversified commodities and a "substantial cash cushion" as a precaution against "downside price movements." *Id.* Plaintiffs contend that Defendants, however, *did*

---

[1] The Court may consider documents attached to a motion to dismiss when the documents are "referred to in the plaintiff's complaint and are central to her claim." *IberiaBank Corp. v. Illinois Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). Here, as explained below, the parties' contracts are central to Plaintiffs' claims, and Plaintiffs do not object to considering them here. *See, e.g.*, *Verde v. Stoneridge, Inc.*, 137 F. Supp. 3d 963, 976 n.6 (E.D. Tex. 2015) (considering a purchase order attached to a dismissal motion because the complaint referred to the contract and it was central to the plaintiffs' breach-of-express-warranty claim); *Nichols v. Alcatel USA, Inc.*, No. 5:05-cv-43-DF, 2006 WL 8440883, at *4 (E.D. Tex. Sept. 27, 2006) (considering informational materials attached to a dismissal motion because the Complaint referred to these documents and they were central to the plaintiffs' breach-of-fiduciary-duty claim). Defendants assert that a third contract, the Customer Agreement, also informs each Plaintiff's contractual relationship with Defendants. Docket No. 32 at 7. But, as the Court previously stated, the Customer Agreement's purpose is to "establish an account for the purchase and sale of futures and option contracts" and to "impose[] distinct obligations on Plaintiff and FCStone in maintaining that account." Docket No. 24 at 7–8. Accordingly, the Customer Agreement governed each Plaintiff's relationship with FCStone, not OptionSellers and Cordier.

*not* implement the investment strategy as advertised, resulting in their losses. *Id.* at ¶¶ 3–4. Instead of maintaining a diverse portfolio, for instance, Defendants allegedly overconcentrated investments in two commodities: natural gas and crude oil. *Id.* at ¶¶ 3, 34. When natural gas prices spiked in November 2018, Defendants' investments cratered, creating alleged losses of $200 million for their nearly 300 managed accounts. *Id.* at ¶¶ 4, 40–41. As a result of these losses, Plaintiffs now *owe* more than they initially invested. *Id.* at ¶¶ 4, 41. To recover their initial investment and other economic damages, Plaintiffs filed this lawsuit. Docket No. 2 at ¶ 73.

Defendants now seek to dismiss the Complaint in part under Rule 12(b)(6), arguing that (1) Plaintiffs' fraud allegations fail to satisfy the particularity requirement of Rule 9(b); (2) Texas's economic loss rule bars Plaintiffs' claims for negligent misrepresentation, negligence, negligent supervision, and breach of fiduciary duty; (3) the Complaint fails to state a claim because Plaintiffs do not plead individual facts and seek a lump sum in damages; and (4) Plaintiff Mark Marshall's claim fails for lack of standing. Docket No. 32.

## II. MOTION TO DISMISS STANDARD

Under Rule 12(b)(6), a party may seek dismissal for failure to state a claim upon which relief can be granted. "Thus, claims may be dismissed under Rule 12(b)(6) 'on the basis of a dispositive issue of law.'" *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326 (1989)). Claims may also be dismissed if the plaintiff does not plead sufficient facts, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Such "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and must "make relief plausible, not merely conceivable, when taken as true." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009).

In evaluating a Rule 12(b)(6) motion, the Court must "accept as true all well pleaded facts in the complaint." *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986). "All questions of fact and any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor." *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001).

### III. ANALYSIS

#### A. Plaintiffs have adequately alleged fraud under Rule 9(b).

Defendants argue that Plaintiffs' fraud claim (Count 1) fails the Fifth Circuit's "newspaper test" because the Complaint does not identify who solicited Plaintiffs, what the solicitations were, how they gave rise to misrepresentations, and when Plaintiffs were solicited. Docket No. 32 at 3–5. Plaintiffs contend that Rule 9(b) has no "single construction" under Fifth Circuit precedent and that the Complaint adequately pleads and supports the elements of fraud. Docket No. 42 at 12–13.

In alleging fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). As applied in the Fifth Circuit, "the complaint must contain factual allegations stating the 'time, place, and contents of the false representations, as well as the identity of the person making

4

the misrepresentation and what [that person] obtained thereby.'" *In re Life Partners Holdings, Inc.*, 926 F.3d 103, 116–17 (5th Cir. 2019) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). "[T]he particularity Rule 9(b) demands 'differs with the facts of each case,'" but it "generally require[s] that a complaint detail 'the who, what, when, and where.'" *United States ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*, 816 F. App'x 892, 896–97 (5th Cir. 2020) (per curiam), *cert. denied*, No. 20-581, 141 S.Ct. 905 (U.S. Dec. 7, 2020) (quoting *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000)). Rule 9(b) is a gateway to the "discovery process," protecting the defendant from unnecessary discovery requests by requiring the plaintiff to specify the alleged fraud's scope at the outset. *See id.*

Applying that law here, the Court finds that Plaintiffs' Complaint adequately identifies the "who, what, when, and where" of the alleged fraud.

- Who: Plaintiffs allegedly "received solicitation from OptionSellers and Mr. Cordier" and "Mr. Cordier pitched OptionSellers' strategy." Docket No. 2 at ¶ 25. Defendants mistakenly argue that the "who" refers to the solicitation, Docket No. 32 at 4, but by identifying Mr. Cordier as the "person making the misrepresentation," Plaintiffs adequately plead the "who" element. *See In re Life Partners*, 926 F.3d at 117.

- What: Plaintiffs allegedly "received solicitation," which described "an options strategy involving straddles, strangles and spreads" and a "submarine" strategy to diversify assets. Docket No. 2 at ¶¶ 25–26. These allegations satisfy the "what" inquiry by providing the "contents of the false representations." *See In re Life Partners*, 926 F.3d at 117. Defendants argue that Plaintiffs must identify *which* solicitations they received. Docket No. 32 at 4–5. The Court declines to require a more specific pleading when Plaintiffs clearly articulated the solicitation's relevant content.

5

- When: Plaintiffs allege that "[i]n or about 2017, Plaintiffs received solicitation." Docket No. 2 at ¶ 25. This timeframe is not precise, but it satisfies Rule 9(b) because it provides a definite window rather than, for example, a "period of several years," which would be too indefinite to satisfy even Rule 8. *C.f. Berry v. Indianapolis Life Ins. Co.*, 600 F. Supp. 2d 805, 816 (N.D. Tex. 2009). Defendants argue that because Plaintiffs opened accounts at different times, it is improbable that they received a solicitation at the same time. Docket No. 32 at 5. The Court does not read the Complaint necessarily to allege a single solicitation, *see* Docket No. 2 at ¶ 25, and so disposes of Defendants' argumentation at this stage of litigation.

- Where: Plaintiffs allege that "all or a substantial part of the events or omissions giving rise to Plaintiffs' claim occurred in Cherokee County." Docket No. 2 at ¶ 7. Defendants do not explain why this description of "where" the events occurred is insufficient. *See* Docket No. 32 at 5–6.

Because the Complaint identifies who made the statements, what was communicated, and when and where the communications transpired, the Court **DENIES** Defendants' motion to dismiss Plaintiffs' "misrepresentation/omission" claim under Rule 9(b) (Count 1).

**B. Plaintiffs' claims of negligent misrepresentation, negligence, and negligent supervision are barred by the economic loss rule.**

Defendants argue that the economic loss rule bars Plaintiffs' negligence claims (Counts 2, 4, and 5) because they owed Plaintiffs only contractual duties and any injuries arose solely from the contractual relationship. Docket No. 32 at 6–7. Plaintiffs contend that the economic loss rule does not apply because their negligence claims entail duties and injuries independent of the contractual relationship.[2] Docket No. 42 at 6–7, 9–10.

---

[2] Plaintiffs also argue against dismissal of their fraudulent inducement claim, Docket No. 42 at 8–9, but that claim is not at issue here. Docket No. 42 at 5 n.1. ("Defendants have not moved to dismiss Plaintiffs' fraud cause of action on the basis of the economic loss doctrine. Unquestionably, the

6

Under Texas's economic loss rule, a plaintiff who is a party to a contract cannot sue under tort *unless* (1) the defendant owed plaintiff a common law—not contractual—duty and (2) the plaintiff suffered an injury independent of the contract. *Correct RX Pharmacy Servs., Inc. v. Cornerstone Automation Sys., L.L.C.*, 945 F.3d 423, 429 (5th Cir. 2019) (citing *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663 (Tex. 1998)). "In operation, the rule restricts contracting parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence." *Golden Spread Elec. Coop., Inc. v. Emerson Process Mgmt. Power & Water Sols., Inc.*, 954 F.3d 804, 808 (5th Cir. 2020) (quoting *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12–13 (Tex. 2007)).

In deciding whether the economic loss rule applies, a court should "examine the source of the defendant's duty and the nature of the claimed injury." *Clark v. PFPP Ltd. P'ship*, 455 S.W.3d 283, 288 (Tex. App.—Dallas 2015) (citing *El Paso Marketing, L.P. v. Wolf Hollow I, L.P.*, 383 S.W.3d 138, 143 (Tex. 2012)). When "[p]laintiffs fail to allege facts that would impose a duty upon [d]efendants outside of the alleged contracts[,]" the economic loss rule bars the claim and it "should be dismissed as not plausible." *Singh v. JP Morgan Chase Bank, NA*, No. 4:11-cv-607, 2012 WL 2013019, at *9 (E.D. Tex. Apr. 5, 2012), *R. & R. adopted*, No. 4:11-cv-607, 2012 WL 2012742 (E.D. Tex. June 5, 2012). Further, the Court must determine

---

economic loss doctrine does not apply to a fraud or fraudulent inducement claim in Texas."); Docket No. 45 at 2 ("[T]he Count 1 Fraud claim in the case at bar is not at issue with regard to the economic loss doctrine argument.").

7

"whether the injury is to the subject of the contract itself." *Lamar Homes*, 242 S.W.3d at 12. "Texas has recognized that, where the damages claimed are (as here) economic loss to the subject of the contract itself, the remedy ordinarily is one of contract alone." *Kevin M. Ehringer Enterprises, Inc. v. McData Servs. Corp.*, 646 F.3d 321, 325 (5th Cir. 2011) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 45 (Tex. 1998)); *accord New Century Fin., Inc. v. Olympic Credit Fund, Inc.*, 487 F. App'x 912, 915–16 (5th Cir. 2012) (per curiam)).[3]

Applying that law here, the Court finds that the economic loss rule bars Plaintiffs' negligence claims.

### 1. Negligent Misrepresentation

To state a claim for negligent misrepresentation, Plaintiffs must allege: (1) Defendants made a representation "in the course of [their] business, or in a transaction in which [they] ha[d] a pecuniary interest;" (2) Defendants supplied "'false information' for the guidance of others in their business;" (3) Defendants "did not exercise reasonable care or competence in obtaining or communicating the information;" and (4) Plaintiffs suffered "pecuniary loss by justifiably relying on the

---

[3] For a negligent misrepresentation claim, however, "the independent injury requirement is satisfied under Texas law when a plaintiff endeavors to recover only out-of-pocket expenses," including recovery for pecuniary loss resulting from a plaintiff's reliance on the defendant's misrepresentation. *Correct RX Pharmacy*, 945 F.3d at 430 (construing *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663 (Tex. 1998)) (citing RESTATEMENT (SECOND) OF TORTS § 552B(1)(a)–(b)). Here, Plaintiffs reference reliance damages, including the "loss of opportunity to invest in legitimate investments plans." Docket No. 2 at ¶ 73. Such damages may constitute an independent injury in a negligent misrepresentation claim. But the Court declines to reach this issue because Plaintiffs' negligent misrepresentation claim fails as a matter of law for lack of duty, as explained *infra* Section III.B.1. *See, e.g., Bray Int'l, Inc. v. Computer Assocs. Int'l, Inc.*, No. CIV.A. H-02-98, 2005 WL 6792280, at *28 (S.D. Tex. Sept. 30, 2005), *rev'd in part on recons.*, No. CIV H-02-0098, 2005 WL 3371875 (S.D. Tex. Dec. 12, 2005) (holding as a matter of law that the economic loss rule barred plaintiff's negligent misrepresentation claim where plaintiff alleged a separate injury but did not allege that defendant owed a common law duty).

8

representation." *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). "In general, 'promises of future action are not actionable as a negligent-misrepresentation tort.'" *Chavez v. Wells Fargo Bank, N.A.*, 578 F. App'x 345, 349 (5th Cir. 2014) (per curiam) (quoting *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x. 200, 205 (5th Cir. 2012) (unpublished)).

As an initial matter, each alleged misrepresentation made by Defendants is forward-looking and is therefore not actionable. *See id.* For example, the Complaint states: "It was explained to Plaintiffs that Defendants would execute an options strategy," Docket No. 2 at ¶ 25, and "Defendants touted to Plaintiffs their 'submarine' approach . . . the strategy implemented by Defendants was diametrically opposite[.]" *Id.* at ¶ 26; *see also id.* at ¶ 51 (comparing what Defendants said they would do to what they did). Because the "alleged representations constitute promises of future action," Defendants owed Plaintiffs no common law duty regarding them. *See Scott v. Wells Fargo Bank, NA*, No. 4:11-cv-600, 2013 WL 5450600, at *9 (E.D. Tex. Sept. 30, 2013), *aff'd sub nom. Scott v. Fed. Home Loan Mortg. Corp.*, 605 F. App'x 454 (5th Cir. 2015) (per curiam).

Further, the alleged statements by Defendants relate directly to the parties' contracts, wherein the parties repeatedly affirmed that Defendants' services were not assured to result in profit and that Plaintiffs "discussed the risks of futures and options trading" with the Defendants and understood those risks. Docket No. 32, Ex. B at 7–8, Ex. C at 8–9, Ex. D at 13–14. To the extent Defendants' trading strategy varied from the "discussed [] risks," Plaintiffs' action arises, if at all, under contract.

9

*See, e.g., Williams v. Fed. Nat. Mortg. Ass'n*, No. 2:11-cv-157-J, 2012 WL 443986, at *4 (N.D. Tex. Feb. 13, 2012) (holding the economic loss rule barred plaintiffs' negligent misrepresentation claim where negligence allegations were "equivalent to arguing [d]efendants failed to perform their obligations under the contract.").

### 2. Negligence

To state a claim for negligence, Plaintiffs must allege: (1) Defendants owed a duty, (2) Defendants breached that duty, and (3) Plaintiffs suffered damages proximately caused by the breach. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006); *Lane v. Halliburton*, 529 F.3d 548, 565 (5th Cir. 2008).

Here, both the source of Defendants' duty and the nature of Plaintiffs' injury are contractual. The Complaint identifies several duties that Defendants allegedly owed Plaintiffs, including: a duty to "[m]anage the accounts" according to the customer's objectives, "not misrepresent or fail to disclose material facts," to "explain the practical impact and potential risks of the course of dealing," to keep them informed regarding "changes in the market" and "each completed transaction," and to "properly handle margin liquidations and trade allocations" in the relevant accounts. Docket No. 2 at ¶ 64. The Complaint expressly references Plaintiffs' accounts and makes clear that Defendants assumed these duties when they undertook to manage the accounts pursuant to the parties' agreements. *See id.* The alleged duties, then, arise under the parties' contracts, and the remedy for breach sounds in contract. *See Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991).

Plaintiffs also failed to allege an injury independent of the contract. Plaintiffs seek to recover their principal investment and other losses associated with the investment. Plaintiffs request "no less than $2,200,000"—an amount representing their initial investments—and to recover for other associated losses, including special and consequential damages. Docket No. 2 at ¶¶ 41, 73. All alleged damages thus flow from Plaintiffs' investments, which are the subject of their agreements with Defendants. Indeed, Plaintiffs describe their suit as "largely seeking to recover the consideration paid to the Defendants in the first place[.]" Docket No. 42 at 7. Because Plaintiffs' "injury is only the economic loss to the subject of a contract itself[,] the action sounds in contract alone." *See DeLanney*, 809 S.W.2d at 495 (quoting *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)).

Limiting Plaintiffs to a contractual remedy is especially important here, where the parties had the "full opportunity to consider their positions and manage risks ahead of time," and their pecuniary losses are fungible. *See Golden Spread Elec. Coop.*, 954 F.3d at 808 (citing *LAN/STV v. Martin K. Eby Const. Co.*, 435 S.W.3d 234, 240–41 (Tex. 2014)).

### 3. Negligent Supervision

To state a claim for negligent supervision, Plaintiffs must allege: (1) Defendants owed them a legal duty to supervise their employees; (2) Defendants breached that duty; and (3) the breach proximately caused Plaintiffs' injuries. *People's Choice Home Loan, Inc. v. Mora*, No. 306-cv-1709-G, 2007 WL 708872, at *7

11

(N.D. Tex. Mar. 7, 2007) (citing *Knight v. City Streets, L.L.C.*, 167 S.W.3d 580, 584 (Tex. App.—Houston [14th Dist.] 2005, no pet.)).

Like Plaintiffs' negligence claim, this claim is barred by the economic loss rule because both the source of Defendants' duty and the nature of Plaintiffs' injury are contractual. The Complaint asserts that Defendant OptionSellers owed a "common law duty to supervise its employees." Docket No. 2 at ¶ 68. But absent a special relationship between the parties, OptionSellers owed no general duty to Plaintiffs to supervise its employees. *See Mason v. Bank of Am., Nat. Ass'n*, No. 4:12-cv-291, 2013 WL 1313773, at *9 (E.D. Tex. Feb. 25, 2013), *R. & R.* adopted, No. 4:12-cv-291, 2013 WL 1313769 (E.D. Tex. Mar. 28, 2013) (granting dismissal of negligent supervision claim where plaintiff did not allege any special relationship)*; c.f. Gordon v. Bank of Am. Corp. & Green Tree Servicing, LLC*, No. 3:15-cv-902-L, 2015 WL 5872659, at *8 (N.D. Tex. Oct. 5, 2015) (denying dismissal of negligent supervision claim where plaintiff alleged that defendant owed plaintiff a duty to supervise a particular employee).

Although a company's supervisory duties may extend to certain members of the public if "the third party's harm is brought about by reason of the employment and is, in some manner, job-related," that rule does not apply here. *Capece v. Navisite, Inc.*, No. 03-02-00113-cv, 2002 WL 31769032, at *4 (Tex. App.—Austin Dec. 12, 2002) (unpublished) (citing *Dieter v. Baker Serv. Tools*, 739 S.W.2d 405, 408 (Tex. App.—Corpus Christi 1987, writ denied)). Plaintiffs allege that OptionSellers failed to supervise employees' approval and opening of accounts,

implementation of investment strategies, compliance with laws and regulations, and allocation of post-trade profits and losses. Docket No. 2 at ¶ 69. But the parties' Advisory and Fee Payment Authorization contractually governed these activities and defined Defendants' duties. Docket No. 32, Ex. B–D. Further, as explained above in analyzing the negligence claim, Plaintiffs have not identified an injury independent of the parties' contracts. *See DeLanney*, 809 S.W.2d at 495. The economic loss rule thus operates to bar Plaintiffs' negligent supervision claim. *See Jim Walter Homes*, 711 S.W.2d at 619 (applying the economic loss rule to preclude tort recovery for negligent supervision).

\* \* \*

Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' negligence claims (Counts 2, 4, and 5).

### C. Plaintiffs' breach of fiduciary duty claim is not barred by the economic loss rule.

Defendants assert, without analysis or support, that the economic loss rule also bars Plaintiffs' breach-of-fiduciary-duty claim. Docket Nos. 32 at 2; 45 at 1. But "the economic loss rule is inapplicable, and does not bar [a] breach of fiduciary duty claim" when a contract "creates a special relationship that creates fiduciary duties by operation of law." *Turnbow v. Life Partners, Inc.*, No. 3:11-cv-1030-M, 2012 WL 4473080, at *5 (N.D. Tex. Sept. 28, 2012) (citing *Fid. & Deposit Co. of Maryland v. Com. Cas. Consultants, Inc.*, 976 F.2d 272 (5th Cir. 1992)); *see, e.g., ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 873–74 (Tex. 2010)). Here, Plaintiffs have alleged a fiduciary duty created by the parties' contract, Docket No. 2 at 58–60, and

Defendants have not identified any other source of a fiduciary duty. Accordingly, the Court **DENIES** Defendants' motion to dismiss Plaintiffs' fiduciary duty claim (Count 3).

### D. Plaintiffs adequately pleaded individual claims.

Defendants argue that Plaintiffs' Complaint is inadequate because their claims are not individually enumerated and they seek an aggregate damages award of "over $2,000,000," rather than specifying each Plaintiff's individual damages. Docket No. 32 at 8. The Court finds that the Complaint satisfies Rule 8(a)'s minimal pleading requirement.[4]

The Federal Rules require a pleading to include:

(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

FED. R. CIV. P. 8(a). "Each allegation must be simple, concise, and direct. No technical form is required." *Id.* at 8(d). Further, "[p]leadings must be construed so as to do justice." *Id.* at 8(e). In construing a complaint, "the Court must look to the Complaint as a whole." *Yang Wu Int'l, Inc. v. LS & CX, LLC*, No. 4:20-cv-312, 2020 WL 6161548, at *3 (E.D. Tex. Oct. 21, 2020).

Here, the Complaint alleges that, "[e]ven though Plaintiffs had designated accounts in their individual names, upon information and belief, Defendants

---

[4] As discussed above, Plaintiffs' fraud claim (Count 1) satisfies Rule 9(b)'s heightened pleading standard.

14

implemented a singular strategy on behalf of all their clients." Docket No. 2 at ¶ 30. If, as Plaintiffs allege, Defendants treated each Plaintiff the same, then the Complaint need not repeat itself three times in order to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* FED. R. CIV. P. 8(a)(2). Further, contrary to Defendants' contention, the Complaint expressly identifies the Plaintiffs as "three separate individuals with three separate individual accounts, opened at three separate times more than a year apart, and three separate individual interactions with the Defendants." *See* Docket No. 32 at 8.

The Complaint also expressly demands a "[j]udgment in Plaintiffs' favor in an amount to be determined at trial, but no less than $2,200,000," along with other damages. Docket No. 2 at ¶ 73. This satisfies Rule 8's requirement to plead "a demand for the relief sought, which may include relief in the alternative or different types of relief." FED. R. CIV. P. 8(a)(3). Defendants argue that the pleading is insufficient because each Plaintiff's recovery is indeterminate. Docket No. 32 at 8. But Plaintiffs identify each Plaintiff's initial investment amount, which forms the basis of their damage request. *See* Docket Nos. 2 at ¶¶ 27–30; 42 at 7 ("Plaintiffs are largely seeking to recover the consideration paid to the Defendants in the first place, *i.e.*, their out-of-pocket damages"). Plaintiffs also seek related damages, including— among other claims—special and consequential damages and disgorgement of Defendants' profits. Docket No. 2 at ¶ 73. "In pleading damages, a plaintiff need not allege an exact number. Rather, the plaintiff must allege a 'plausible, non-speculative claim for damages.'" *Hong Kong Aroma Star Int'l LLC v. Elta MD Inc.*,

15

No. 3:18-cv-2228-G, 2020 WL 619898, at *3 (N.D. Tex. Feb. 7, 2020) (quoting *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n.44 (5th Cir. 2011)). Absent any challenge to the plausibility of the alleged damages, the Court concludes the pleaded damages are sufficient.

Thus, the Complaint's prayer for damages satisfies Rule 8(a), and Defendants' motion on this ground is **DENIED**.

### E. Plaintiff Mark Marshall has standing.

Plaintiffs' Complaint names Mark Marshall as a plaintiff. Defendants argue that Mr. Marshall individually suffered no "injury" because the Marshall Living Trust, and not Mr. Marshall, invested funds with Defendants. Docket No. 32 at 9. Defendants introduce evidence to prove the point. *Id.* at Ex. A, D. Plaintiffs argue that Mr. Marshall suffered an injury because Defendants made false representations to him and because, as a trustee and beneficiary of the trust, any harm to the trust is also a harm to Mr. Marshall. Docket No. 42 at 10–11.

Federal Rule of Civil Procedure 17 provides that "[a]n action must be prosecuted in the name of the real party in interest." FED. R. CIV. P. 17(a). The rule then identifies those who "may sue in their own names without joining the person for whose benefit the action is brought," including a "trustee of an express trust." *Id.* at 17(a)(1)(E). Further, "[u]nder Texas law, a suit involving a trust generally must be brought by or against the trustee, and can be binding on the beneficiaries whether they join it or not." *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 133–34 (Tex. 2005) (footnote omitted). Here, according to Defendants' own documents, Mr. Marshall is

16

a trustee of the Marshall Living Trust, and is suing to recover for the trust's losses. Under Rule 17 and Texas law, Mr. Marshall thus has standing to sue in this case. *See Davis v. Wells Fargo Bank NA et al.*, No. 4:14-cv-254-O, 2015 WL 11120587, at *2 (N.D. Tex. Jan. 15, 2015) ("Here, [Plaintiff] derives his standing to bring the instant action based on his capacity as the trustee of the [] Family Trust."). Accordingly, the Court **DENIES** Defendants' motion to dismiss Plaintiff Mark Marshall's claims for lack of standing.

## IV.  CONCLUSION

In sum, the Court **GRANTS IN PART** Defendants' motion to dismiss and **DISMISSES WITH PREJUDICE** Plaintiffs' claims for negligent misrepresentation, negligence, and negligent supervision (Counts 2, 4, and 5). The Court **DENIES** Defendants' motion to dismiss: (1) Plaintiffs' omission/misrepresentation claim (Count 1); (2) Plaintiffs' breach of fiduciary duty claim (Count 3); (3) all claims for failure to plead individual facts and seek individual damages; and (4) Defendants' motion to dismiss Plaintiff Mark Marshall's claims.

Further, in light of the parties' Joint Mediation Report (Docket No. 50) stating that mediation has not yet occurred as required by the Scheduling Order (Docket No. 38), the Court hereby **ORDERS** the parties to file a status report regarding mediation within **SEVEN DAYS** of the date of this Order.

So **ORDERED** and **SIGNED** this **5th** day of **April, 2021.**

_____
JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE

17